Peter W. GUILDAY, Plaintiff,

v.

The UNITED STATES DEPARTMENT OF JUSTICE et al., Defendants.

Civ. A. No. 4578.

United States District Court,
D. Delaware.

Oct. 22, 1974.

Robert F. Stewart, Morris, Nichols, Arsht & Tunnell, Wilmington, Del., for plaintiff.

Ralph F. Keil, U.S. Atty., and Alan J. Hoffman, Asst. U.S. Atty., for defendants.

## MEMORANDUM OPINION

CALEB M. WRIGHT, Senior District Judge.

The purpose of this opinion is to delineate the appropriate standard for review of administrative action on federal employee discrimination complaints. Plaintiff is a criminal investigator employed by the Immigration and Naturalization Service of the United States Department of Justice. He has brought this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., as amended by the Equal Employment Opportunity Act of 1972, Pub.L. 92–261, 86 Stat. 103, to redress alleged discrimination in promotion based on race and creed[1] and reprisals following his complaints of discrimination. Following this opinion, the parties will brief the application of the standard of review here articulated to the administrative record. A fuller account of the facts underlying plaintiff's complaint will await this Court's decision on the merits.

### Trial De Novo

The Equal Employment Opportunity Act of 1972 extended protections against employment discrimination to federal employees similar to those protections already available to employees in the private sector under Title VII of the 1964 Civil Rights Act. Under the scheme of the Equal Employment Opportunity Act of 1972, an aggrieved federal employee must initially file his complaint of discrimination with the employing "department, agency, or unit." After receiving notice of final action on his complaint by his department, agency, or unit, or, should he pursue an administrative appeal, by the Civil Service Com-

mission, the employee who is "aggrieved by the final disposition of his complaint, or by the failure to take final action on his complaint, may file a civil action as provided in section 2000e–5. . . ." 42 U.S.C. § 2000e–16(c). Plaintiff contends that having pursued his claim unsuccessfully before the Department of Justice and the Civil Service Commission, he is now entitled by statute to a trial de novo in this Court.

The text of the Equal Employment Opportunity Act is silent on the issue of whether a trial de novo is automatically required in cases of federal employee complaints. However, § 2000e–5, the part of the 1964 Civil Rights Act to which § 2000e–16(c) refers, has been held to create for private employees the right to a trial de novo following proceedings before the Equal Employment Opportunity Commission. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 799, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Plaintiff argues that since federal employees "may file a civil action as provided in section 2000e–5" and since that section has been held to authorize a trial de novo, federal employees are entitled to a trial de novo. On the other hand, § 2000e–16(d) provides: "The provisions of section 2000e–5(f) through (k) of this title, *as applicable*, shall govern civil actions brought hereunder [emphasis added]." This language seems to allow for some judicial discretion in applying the procedures of court review in private employee cases to cases of federal employees.

If the text of the statute is ambiguous on the issue of trial de novo, the legislative history also admits of opposite interpretations. On the one hand certain legislators plainly anticipated that aggrieved federal employees would be entitled to a de novo trial. For example, as the court noted in Henderson v. Defense Contract Administration Services, 370 F.Supp. 180 (S.D.N.Y.1973):

". . . Senator Cranston, one of the cosponsors of the Act, was origi-

---

1. Plaintiff is white and Christian.

nally reported to have stated that there was no right to a de novo trial in this type of suit. Subsequently, after this statement was brought to his attention, he corrected the record and categorically asserted: 'As with other cases brought under title VII of the Civil Rights Act of 1964, Federal district court review would not be based on the agency and/or CSC record and *would be a trial de novo.'* " 370 F.Supp. at 184 [footnotes omitted].[2]

On the other hand, certain language in the legislative history envisions only "review of the administrative proceeding record."[3] The fact that the Civil Service Commission was granted substantially greater remedial powers than those held by the Equal Employment Opportunity Commission[4] tends to indicate that de novo litigation in federal employee. cases is less appropriate than in private sector employee cases. However, the fact that a federal employee can, following an adverse decision by his employing agency, file an action in federal district court directly and bypass the Civil Service Commission, § 2000e–16(c), carries an opposite implication.

The leading case on the issue of trial de novo in federal employee discrimination cases is Hackley v. Johnson, 360 F. Supp. 1247 (D.D.C.1973). There, Judge

Gesell reached the conclusion, based on the legislative history of the 1972 Act, "common sense", experience, and precedent, that no automatic trial de novo is required:

"The trial *de novo* is not required in all cases. The District Court is required by the Act to examine the administrative record with utmost care. If it determines that an absence of discrimination is affirmatively established by the clear weight of the evidence on the record, no new trial is required. If this exacting standard is not met, the Court shall, in its discretion, as appropriate, remand, take testimony to supplement the administrative record, or grant the plaintiff relief on the administrative record." 360 F.Supp. at 1252.

Most courts that have considered this issue have adopted the *Hackley* position.[5] A minority of courts has concluded that employees of the federal government are entitled to a trial de novo just as employees in the private sector are so entitled.[6] This view has received scholarly support.[7]

On balance, this Court determines that the *Hackley* position is the better view. In the absence of clear guidelines from Congress, it is appropriate for the courts to consider the inter-

---

2. Remarks of a similar tenor were made by Senator Harrison Williams, Chairman of the Senate Committee on Labor and Public Welfare and floor manager of the Committee Bill. 118 Cong.Rec.S. 2230 (daily ed. February 22, 1972); Senate Committee on Labor and Public Welfare Compilation, Legislative History of the Equal Employment Act of 1972, 92d Cong., 2d Sess. (1972), at 1727. But see, Pointer v. Sampson, 62 F.R.D. 689 (D.D.C.1974).

3. 118 Cong.Rec.S. 2280–81 (daily ed. February 22, 1972) (remarks of Senator Williams).

4. See Pointer v. Sampson, 62 F.R.D. 689. Furthermore, Civil Service Commission regulations provide significant procedural rights for aggrieved employees. *Id.*, at 692.

5. Evans v. Johnson, Civil No. 73–2520–MML (C.D.Cal. April 26, 1974); Pointer v. Sampson, *supra*; Thompson v. United States De-

partment of Justice, 372 F.Supp. 762 (N.D. Cal.1974); Tomlin v. United States Air Force Medical Center, 369 F.Supp. 353 (S.D.Ohio 1974); Chandler v. Johnson, 7 EPD ¶ 9139 (C.D.Cal. December 31, 1973); Handy v. Gayler, 364 F.Supp. 676 (D.Md.1973); Johnson v. United States Postal Service, 364 F. Supp. 37 (N.D.Fla.1973); Williams v. Mumford, 6 EPD ¶ 8905 (D.D.C. August 20, 1973). [The citation EPD refers to CCH Employment Practices Decisions].

6. Henderson v. Defense Contract Administration Services, 370 F.Supp. 180 (S.D.N.Y. 1973); Jackson v. United States Civil Service Commission, 7 EPD ¶ 9134 (S.D.Tex. December 13, 1973); Griffin v. United States Postal Service, 7 EPD ¶ 9133 (M. D.Fla. February 7, 1973).

7. Sape & Hart, Title VII Reconsidered: The Equal Employment Opportunity Act of 1972, 40 G.W.L. Rev. 824, 857 (1972).

ests of judicial economy and fairness before requiring an automatic trial de novo. To the extent that a trial de novo would require pretrial discovery and trial proof of factual background already developed in administrative proceedings, it would be unjustifiably duplicative. Moreover, in light of the fact that procedural and substantive rights of a grievant before the Civil Service Commission are significantly greater than correlative rights before the Equal Employment Opportunity Commission, it is not unfair that the rights of federal and private employees to a trial de novo are not symmetrical. See Pointer v. Sampson, *supra*, 62 F.R.D. at 693.

Finally, this Court notes that the *Hackley* result articulated in the passage quoted above is procedurally quite similar to the summary judgment practice that routinely takes place in these cases, even if a trial de novo is thought to be required. As a matter of course, the Government—and often the plaintiff—moves for summary judgment based on the administrative record.[8] The court must decide, after reviewing the record, whether there is a genuine issue as to any material fact and whether the movant is entitled to a judgment as a matter of law. Rule 56(c), Federal Rules of Civil Procedure. Based on this review, the Court either remands for further administrative proceedings, allows the case to go to trial—with the administrative record in evidence—, or grants or denies relief on the administrative record. Because of the inevitability of a Government motion for summary judgment in these cases, what is critical is the kind of scrutiny the court applies to the administrative record, not the existence, in the abstract, of a right to a trial de novo.

### Standard of Review

Plaintiff urges that the administrative finding that there has been no dis-crimination should be sustained on judicial review only if it is "affirmatively established by the clear weight of the evidence in the record." Hackley v. Johnson, *supra*, 360 F.Supp. at 1252. The Government, on the other hand, argues that the appropriate standard of review is the one normally applied to federal employee personnel actions—whether the administrative decision is supported by "substantial evidence" in the record.

The constitutional and moral imperative of eradicating all vestiges of discrimination based on race and creed from public employment has been recognized for many years.[9] In Bolling v. Sharpe, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954), the Supreme Court found that the due process clause of the Fifth Amendment prohibits the federal government from denying to any citizen equal protection of law. See also, Gibson v. Mississippi, 162 U.S. 565, 591–592, 16 S.Ct. 904, 40 L.Ed. 1075 (1896). In 1966, Congress delineated this responsibility with respect to federal employment more precisely: "It is the policy of the United States to insure equal employment opportunities for employees without discrimination because of race, color, religion, sex, or national origin. The President shall use his existing authority to carry out this policy." 5 U.S.C. § 7151. Pursuant to this mandate, President Johnson issued Executive Order 11246 dealing with discrimination on the basis of race, religion, or national origin, and Executive Order 11375, dealing with sex discrimination. Thereafter, President Nixon promulgated Executive Order 11478 which encompassed both of the prior orders, and required affirmative programs, under the supervision of the Civil Service Commission, to insure equal employment opportunity in each executive department or agency. Convinced that those procedures were inadequate, Congress enacted the federal

8. In the present case, the motion was originally filed on December 18, 1973, and following the appointment of counsel for the plaintiff and the filing of an amended complaint, was renewed on May 10, 1974.

9. See generally, Sape & Hart, *supra*, at 853–854.

employment provisions of the Equal Employment Opportunity Act of 1972.[10]

■ The burden of this history is that the United States Government must not suffer the taint of bias in any of its parts. Because the Government is the protector of equality in our public life, it must be exemplary in avoiding employment discrimination. Accordingly, it is altogether proper to demand greater certainty when reviewing an agency finding of no discrimination than when reviewing the remainder of personnel actions. As Judge Gesell stated in *Hackley,* "Precious rights of individuals are involved and these must not be obfusticated [sic] by procrustean adherence to standards of review that are more semantic than substantial." 360 F.Supp. at 1252. Put another way, the nature and history of the requirement of equal opportunity in federal employment convince this Court that the administrative record must contain persuasive, not merely substantial, evidence that no prohibited discrimination has occurred.

This Court, therefore, cannot accept the Government's argument that the "substantial evidence" standard of review ordinarily applied on judicial review of federal personnel actions, either as matter of common law, Polcover v. Secretary of Treasury, 155 U.S.App.D.C. 338, 477 F.2d 1223 (1973), or pursuant to the Administrative Procedure Act, Charlton v. United States, 412 F.2d 390 (3d Cir. 1969), is applicable in Equal Employment Opportunity Act cases. The purpose and history of the 1972 Equal Employment Opportunity Act clearly distinguish federal employee discrimination cases from those, like *Polcover,* applying the substantial evidence standard as a matter of common law. *Accord,* Thompson v. United States Department of Justice; Pointer v. Sampson; Chandler v. Johnson; Johnson v. United States Postal Service; Hackley v. Johnson, all *supra. Contra,* Evans v. Johnson; Tomlin v. United States Air Force Medical Center (*semble*); Handy v. Gayler, all *supra.*

This Court is not aware of any cases discussing the applicability of the standards of judicial review in the Administrative Procedure Act to cases arising under the Equal Employment Opportunity Act. The Government urges that § 706(2)(E) of the Administrative Procedure Act [11] requires "substantial evidence" review. This Court finds, however, that § 706(2)(E) does not govern the standard of review in this case for three reasons. First, the present case is not "subject to sections 556 and 557 of this title" as required by § 706(2)(E)

10. "Congress was not only concerned with the inherent conflict of interest in agency determinations of discrimination against its own employees, but also was concerned that there was little, if any, statutory basis for agency remedies for federal employment discrimination and no opportunity for review of those determinations or independent findings by the federal courts." *Id.,* at 854 [footnotes omitted].

11. 5 U.S.C. § 706 provides:
To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—
(1) compel agency action unlawfully withheld or unreasonably delayed; and
(2) hold unlawful and set aside agency action, findings, and conclusions found to be—
(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
(B) contrary to constitutional right, power, privilege, or immunity;
(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
(D) without observance of procedure required by law;
(E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or
(F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.
In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

because sections 556 and 557 do not govern adjudications involving "the selection or tenure of an employee". 5 U.S.C. § 554(a)(2). See Gnotta v. United States, 415 F.2d 1271, 1276 (8th Cir. 1969), (employee promotion); but see Charlton v. United States, *supra* (employee dismissal). Second, the alternative criterion of § 706(2)(E), that the case be reviewed on the record "of an agency hearing provided by statute", is also not satisfied in the present case, because 42 U.S.C. § 2000e–16 does not by its terms provide for an agency hearing.[12] Finally, to the extent that a court following the *Hackley* review procedure can "take testimony to supplement the administrative record", 360 F. Supp. at 1252, the facts of federal employee discrimination cases are, in effect, "subject to trial de novo by the reviewing court." 5 U.S.C. § 706(2)(F). Accordingly, the reviewing court is not restricted to the substantial evidence review of § 706(2)(E) but rather is empowered by § 706(2)(F) to set aside any agency action, findings and conclusions found to be "unwarranted by the facts". See Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 415, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971).[13]

The two policy arguments advanced by the Government for limiting court review to the "substantial evidence" standard are not convincing. The Government fears that its aggrieved employees may add claims of discrimination, no matter how frivolous, to pedestrian personnel disputes. It is not clear to this Court, however, how a requirement that the Government disprove discrimination with more than "substantial" evidence will provide a haven for frivolous claims. Indeed, courts have found little difficulty thus far in screening out pro forma discrimination claims through the

normal mechanisms of the Federal Rules of Civil Procedure. See, e. g., Thompson v. United States Department of Justice, *supra.* As a further matter, the Government asserts that the standard of review in *Hackley* "insults the agency [the Civil Service Commission] Congress specifically designated as dealing with the problem of discrimination." Defendants' Brief at 16. In the first place, Congress specifically provided that an aggrieved employee may seek judicial review of the agency decision or order without appealing to the Civil Service Commission. 42 U.S.C. § 2000e–16(c). More important, this Court cannot accept the logical corollary to the Government's argument—that providing no judicial review whatsoever would be a compliment to the Civil Service Commission. What is at stake here is the degree of public certainty that there is no discrimination in federal employment. Opting for greater certainty does not disserve the Civil Service Commission.

Having determined that more than the "substantial evidence" standard is required, this Court must define the proper standard with better precision. In Hackley v. Johnson, Judge Gesell held that an absence of discrimination should be established by the "clear weight of the evidence", 360 F.Supp. at 1252, but in applying that standard to the two cases there at issue, Judge Gesell upheld administrative findings supported by a "preponderance" of the evidence, *id.*, at 1253, 1255. It might be argued that "clear weight of the evidence" is synonymous with phrases like "clear and convincing proof" which require persuasion by more than a preponderance of the evidence. See, McCormick on Evidence § 340 (2d ed. 1972). But since the preponderance standard was actually ap-

12. Indeed, paragraphs 21 and 22 of the amended complaint allege that in the most recent administrative phase of plaintiff's case, the Department of Justice followed an *expedited procedure which did not provide for a hearing*, and that plaintiff was in-

formed that he could not receive a hearing on his complaint and that he could not appeal to the Civil Service Commission from the final action thereon.

13. See also, Sape & Hart, *supra*, at 857.

**1102**

plied in *Hackley* and because it is the normal burden of persuasion in civil litigation, this Court will require that the absence of discrimination be established by the preponderance of evidence in the administrative record.