Peter G. EIKENBERRY, Appellant,

v.

Nicholas P. CALLAHAN.

No. 80–2514.

United States Court of Appeals,
District of Columbia Circuit.

April 30, 1981.

Leon Friedman and Mark Lynch, Washington, D. C., on motions for appellant.

Robert L. Begleiter, Sp. Asst. U. S. Atty., Brooklyn, N. Y., on motions for appellee.

Before McGOWAN, Chief Judge, WRIGHT and WILKEY, Circuit Judges.

Opinion PER CURIAM.

PER CURIAM:

On October 31, 1980, the District Court dismissed for lack of subject-matter jurisdiction a *Bivens* First Amendment action brought under 28 U.S.C. § 1331(a) by appellant against a former FBI official.[1] The District Court found that "to a legal certainty, damages in the instant case do not exceed $10,000."[2] Appellant moved for reconsideration November 8, 1980, but this request was denied November 12. On December 1, 1980, the Federal Question Jurisdictional Amendments Act of 1980[3] became law, eliminating the $10,000 amount-in-controversy requirement for federal question

---

1. In his complaint, appellant also alleged a violation of 42 U.S.C. § 1985. The District Court dismissed Eikenberry's § 1985 claim on July 11, 1980.

2. Memorandum Opinion, *Eikenberry v. Callahan*, Civ. Action 79–2915, at 3 (D.D.C. October 31, 1980).

3. Pub.L.No.96–486, 94 Stat. 2369 (1980).

cases under § 1331.[4] Appellant filed this appeal from the District Court's dismissal December 8, 1980. On February 4, 1981, appellant filed a motion for summary reversal. Appellee moved for summary affirmance March 12, 1981.

Appellant argues that the recent amendment to § 1331 applies to this case and requires this court to reverse the District Court's order of dismissal. Appellee contests the applicability of the amendment to this case, but alternatively asks this court to affirm for failure to state a First Amendment claim upon which relief can be granted. Because we hold that Pub.L.No. 96–486 applies to cases pending on appeal, we vacate the order of dismissal and remand the case to the District Court for further proceedings.

## I. BACKGROUND

Peter G. Eikenberry ran unsuccessfully for the Democratic nomination for Congress against John J. Rooney, the incumbent, in 1968 and 1970. On February 25, 1974, the New York Times published an article revealing that in 1968 the FBI had supplied Rooney with "secret" information compiled on Eikenberry by the FBI at the request of an aide to Rooney. Nicholas Callahan, then Assistant Director of the Administrative Division of the FBI, delivered the information to Rooney, with the approval of then Director J. Edgar Hoover.

Eikenberry filed a complaint April 4, 1974, in the Eastern District of New York. On October 22, 1979, this case was transferred to the District Court in this circuit. Appellee renewed his motion for summary

judgment in the District Court here. Appellee argued below that the statute of limitations barred Eikenberry's suit, that Eikenberry had failed to state a claim upon which relief can be granted, and that, in any event, appellee was immune from suit. The Court *sua sponte* raised the jurisdictional issue, and after the parties briefed this issue, the Court dismissed the action for lack of jurisdiction.

## II. DOES PUB.L.NO.96–486 APPLY TO THIS CASE?

Section 4 of Pub.L.No.96–486 states:

This act shall apply to any civil action pending on the date of enactment of this Act.

In *Bradley v. Richmond School Board*, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974), the Supreme Court set out the principles of retroactivity to be applied here.

[A] court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary.

416 U.S. at 711, 94 S.Ct. at 2016.

■■■ In the absence of an express congressional statement on the applicability of legislation to pending cases, retroactivity is the rule. As the Supreme Court stated in *Bradley*, "[E]ven where the intervening law does not explicitly recite that it is to be applied to pending cases, it is to be given recognition and effect." 416 U.S. at 715, 94 S.Ct. at 2018. It must be emphasized that it is for Congress to specifically provide for *non*retroactivity if that is its intent.[5]

---

4. The Act retains the $10,000 amount-in-controversy requirement for actions based on knowing violations of consumer product safety rules. Pub.L.No.96–486, § 3 (amending 15 U.S.C. § 2072(a)).

5. In *Hastings v. Earth Satellite Corp.*, 628 F.2d 85 (D.C. Cir. 1980), this court held that the 1972 Amendment to § 14(m) of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 914(m), repealing the $24,000 limitation on permanent-partial recovery, applied retroactively to Hastings. Hastings had suffered a stroke before passage of the amendment, which injury the Benefits Review Board

held was subject to the $24,000 limitation. In reversing that decision, this court stated:

We find no congressional intention that the repeal not be applied retroactively. The statutory language, to be sure, does not specifically *require* retroactive application of the repeal. We think, though, that the absence of a provision *prohibiting* retroactivity is significant. Congress before 1972 had thrice amended the Act's benefit limitations. Each prior amendment was, by its terms, made inapplicable to injuries or deaths occurring before the date of enactment. The 1972 Con-

In 1976, Congress amended § 1331(a) to eliminate the jurisdictional amount requirement in most federal question cases—"action[s] brought against the United States, any agency thereof, or any officer or employee thereof in his official capacity." [6] Pub.L.No.94–574, § 2, 90 Stat. 2721 (1976). There Congress did not specify, as it did in the December 1, 1980 amendment, that the 1976 amendment to § 1331(a) was to be applied to pending cases.[7] In *Ralpho v. Bell*, 569 F.2d 607, 615 n.51 (D.C. Cir. 1977), this court, "bereft ... of any congressional specification," analyzed legislative intent to determine whether that act applied to pending cases. The court concluded that the amendment at issue there was to be applied to that pending case, in light of the remedial nature of the amendment.

The remedial purposes found in *Ralpho* apply here with equal force. The House Report indicated that Pub.L.No.96–486

> will complete the work of the 94th Congress which eliminated the jurisdictional amount requirement in cases brought against Federal defendants. It resolves the anomolous [sic] situation faced by persons who, although their Federal rights have been violated, are barred from a Federal forum solely because they have not suffered a sufficient economic injury.

gress, by its silence, deviated from the past practice of specifically providing for nonretroactivity.

628 F.2d at 92–93 (emphasis in original) (footnotes omitted).

It cannot be gainsaid that Congress knows how to restrict the retroactive application of the laws it enacts if it so wishes. When Congress amended 28 U.S.C. § 1343 to include the District of Columbia within the meaning of "state" for purposes of the statute, Pub.L.No. 96–170, 93 Stat. 1283 (1979), Congress specifically provided that the amendment "shall apply with respect to any deprivation of rights, privileges or immunities secured by the Constitution and laws *occurring after the date of enactment of this Act.*" *Id.* § 3 (emphasis added). Congress thus elected not to apply this amendment to pending cases based on a past wrong. *Fenster v. Schneider*, 636 F.2d 765, 767 n.2 (D.C. Cir. 1980) (Jurisdiction found to exist on appeal under § 1343 because plaintiff sought injunctive relief against a continuing wrong).

H.R.Rep.No.1461, 96th Cong., 2d Sess., at 1 (1980), U.S.Code Cong. & Admin.News 1980, p. 5063. In Section 4 of Pub.L.No.96–486, Congress expressly indicated its intent "that this bill shall apply to any civil action pending in *Federal* [8] court on the date of enactment. By putting congressional intent into immediate effect, this provision will eliminate ongoing jurisdictional battles, thus saving valuable court time." *Id.* at 4 (emphasis added).

However, in *Ralpho* this court stopped short of a full embrace of retroactivity. Instead, the court held only that the 1976 amendment

> was intended to reach *at least* one category of already-pending cases[,] ... those, *unembarrassed by the statute of limitations* or legal impediment of any other kind, *the plaintiff could refile after the Act took effect.* We think it entirely reasonable to suppose that in the instance of the suit that clearly can be reinstated Congress felt it the part of common sense not to require the inconvenience of refiling.

569 F.2d at 615 n.51 (emphasis added).[9] The court "[left] for another day consideration of the Act's applicability to situations of a different type." *Id.*[10]

This action appears to be "embarrassed by the statute of limitations." Using 1974 as the year the statute of limitations began

---

**6.** The District Court found that appellant filed suit against appellee Callahan in his individual capacity. Thus, the amendment does not directly aid appellant. Memorandum, at 4.

**7.** More significantly, of course, Congress did not specifically prohibit retroactive application of the 1976 amendment. *See* note 5 *supra.*

**8.** Footnote added. Congress, of course, could have stated "pending in *district* court" if it wished to restrict retroactive application of Pub.L.No.96–486. That it did not do so, and that the House report instead stated "pending in Federal court," is significant.

**9.** *See Fenster v. Schneider*, 636 F.2d 765, 767 n.2 (D.C. Cir. 1980).

**10.** *See also Green v. Philbrook*, 427 F.Supp. 834 (D.Vt.1977).

to run, the three-year period applicable to *Bivens* actions brought in the District of Columbia [11] ran in 1977, well before Congress enacted Pub.L.No.96–486. But the discussion in *Ralpho* was never intended to finally and completely settle the question of the amendment's applicability to pending cases. This court's express reservation of the amendment's broader reach is not authority for the proposition that retroactivity is permissible *only* if refiling would not be barred by the statute of limitations. Indeed, the Supreme Court, citing *Ralpho* with approval, appeared to indicate that the amendment is to be applied retroactively without regard to whether refiling would be precluded by the limitations period. *Andrus v. Charlestone Stone Products Co.*, 436 U.S. 604, 607–608 n.6, 98 S.Ct. 2002, 2004–2005, 56 L.Ed.2d 570 (1978).[12]

▮ Appellee also invites this court to construe the word "pending" to exclude cases no longer pending in district court. Appellee contends that Pub.L.No.96–486 and the section it amended concern only the jurisdiction of the district courts over cases before those courts and that it does not apply to cases pending in other fora. Because the District Court denied appellant's motion for reconsideration November 12, the action was not pending in that court on December 1, the date of enactment. Such a narrow definition of "pending" finds no support in the case law, and a restricted application of the retroactivity Congress mandated is plainly at odds with the discernible legislative intent. The ordinary

meaning of "pending" includes cases pending on appeal. In *Thorpe v. Housing Authority of the City of Durham*, 393 U.S. 268, 272–274, 281–283, 89 S.Ct. 518, 520–522, 525–526, 21 L.Ed.2d 474 (1968), a case relied on by the Court in *Bradley*, the Supreme Court applied to the case before it a circular ordered by the Department of Housing & Urban Development *after the Supreme Court had granted certiorari*. If a regulatory directive is applied to a case pending before the Supreme Court on a writ of certiorari (after the North Carolina Supreme Court had affirmed the state court eviction order), then certainly a statute which specifies that it shall apply to any pending civil action must apply to a case pending on direct appeal from the District Court.[13]

Lastly, appellee argues that the rule of retroactivity confirmed by the Supreme Court in *Bradley* is inapplicable where (1) the change in the law is jurisdictional, not substantive, and (2) "in mere private cases between individuals," *Bradley*, 416 U.S. at 711, 94 S.Ct. 2016, quoting *United States v. Schooner Peggy*, 5 U.S. (1 Cranch) 103, 110, 2 L.Ed. 49 (1801). Conceding that there is a reluctance to apply to pending cases a change in the law conferring subject matter jurisdiction, *see Corporacion Venezolana de Fomento v. Vintero Sales Corp.*, 629 F.2d 786, 790–791 (2d Cir. 1980), this is precisely what the Supreme Court did in *Andrus* in the absence of explicit congressional direction to do so.[14]

---

11. D.C.Code § 12–301(8) (1973).

12. Cf. *Corporacion Venezolana de Fomento v. Vintero Sales Corp.*, 629 F.2d 786, 790–791 (2d Cir. 1980) (The "remedial purpose" relied on by the Supreme Court in *Andrus* not broad enough to hold that the provision in the Foreign Sovereign Immunities Act, 28 U.S.C. § 1330, conferring subject-matter jurisdiction, should be applied to cases pending when the act was enacted).

13. See *The Coca-Cola Co. v. FTC*, 642 F.2d 1387 at 1389–1390 (D.C. Cir. 1981) (Soft Drink Act, enacted after oral argument on appeal, applied to pending case). *United States v. Elrod*, 627 F.2d 813, 819 (7th Cir. 1980) (Civil Rights of Institutionalized Persons Act enacted while case was pending on appeal; Seventh

Circuit remanded to District Court in light of the new law); *American Jewish Congress v. Kreps*, 574 F.2d 624, 626–627 (D.C. Cir. 1978) (1976 FOIA amendment applied to case pending on appeal).

14. In *Hastings v. Earth Satellite Corp.*, 628 F.2d 85, 93–94 (D.C. Cir. 1980), this court discussed at length a more relevant distinction courts have drawn.

Where Congress fails to make its intentions absolutely clear, courts are much more inclined to apply retroactively amendments directed at the *remedy* rather than changes in *substantive rights*.... Retroactive modification of remedies normally harbors much less potential for mischief than retroactive changes in the principles of liability. Persons

Appellee's reliance on Chief Justice Marshall's exposition in *Schooner Peggy* is also misplaced. A suit against a former FBI official for violation of appellant's civil rights is not the sort of "mere private case[ ] between individuals" contemplated by the Court. In any event, the concern voiced in *Schooner Peggy* is echoed both in the manifest injustice standard of *Bradley* and the remedy-right dichotomy explicated by Judge McGowan in *Hastings, supra* note 14. Appellee does not argue nor does it appear that there is any injustice in retroactive application of Pub.L.No.96–486.

## III. SHOULD THIS COURT AFFIRM THE DISTRICT COURT'S DISMISSAL ON OTHER GROUNDS?

Appellee argues that even if the December 1 amendment confers jurisdiction in this case, this court can and should affirm the judgment of the District Court for failure to state a claim upon which relief can be granted. Appellee asks this court to independently determine from the record that, as a matter of law, appellant cannot make out a *Bivens* claim for damages. However, appellee admits that in order for appellee to establish the alternative ground for affirmance, a full development of the background of this case, with reference to the record in the District Court, is required.

> and employers must be able to base their conduct on what they believe the law to be. Retroactive creation of legal responsibilities or abolition of legal rights risks unfairness because the retroactive change confounds the expectations upon which persons acted.
>
> Retroactive modifications in remedy, on the other hand, often do not involve the same degree of unfairness. Such modifications do not transform a legal act into an illegal act, or render one responsible to safeguard someone previously thought to act at his peril. Modification of remedy merely adjusts the extent, or method of enforcement, of liability in instances in which the possibility of liability previously was known. For this reason, absent contrary direction from Congress, courts are more inclined to apply retroactively changes in remedies than changes in liability.
>
> (emphasis in original) (citation and footnotes omitted).

■ It is a time-honored rule of law that "[a] successful party in the District Court may sustain its judgment on any ground that finds support in the record." *Jaffke v. Durham*, 352 U.S., 280, 281, 77 S.Ct. 307, 308, 1 L.Ed.2d 314 (1952). But appellee's own argument belies the relevance of this principle to this case. Appellee wishes to use this appeal to develop a record sufficient to permit this court to affirm, but if there is a record to be developed, it is for the District Court to do so in the first instance. If the District Court should grant summary judgment for appellee, the case would then be in a proper posture to be heard on appeal.

As the Supreme Court noted in *Dandridge v. Williams*, 397 U.S. 471, 476 n.6, 90 S.Ct. 1153, 1157, 25 L.Ed.2d 491 (1970), "[w]hen attention has been focused on other issues . . ., it may be appropriate to remand the case rather than deal with the merits of that question in this Court." Here the District Court's attention was focused almost entirely on the jurisdictional question. It is far better to return the case to the District Court for it to determine for the first time the merits of the case.

## IV. CONCLUSION

We hold that Pub.L.No.96–486 is to be applied retroactively to cases pending on appeal.[15] Accordingly, the District Court's

---

The December 1 amendment repealing the last vestige of the amount-in-controversy requirement in federal question cases is directed at the remedy. Pub.L.No.96–486 does not at all alter the responsibilities of federal officials or employers sued in their individual capacity. The amendment does adjust the extent and method of enforcement of liability, in securing a federal court without regard to an amount-in-controversy.

**15.** In *Theriault v. Brennan*, 641 F.2d 28 at 29 n.1 (1st Cir. 1981), the First Circuit applied Pub.L.No.96–486 to a case pending before it on appeal. The court stated that "[w]e need not consider the question of whether the Commerce Clause is a proper jurisdictional basis for this action, because on December 1, 1980, the Congress amended 28 U.S.C. § 1331, clearly vesting us with jurisdiction."

order of dismissal is vacated and this case is remanded to the District Court for further proceedings.

*Vacated and remanded.*